379 So.2d 922 (1980)
Ollie E. STAUFFER
v.
Ann H. STAUFFER.
No. 51670.
Supreme Court of Mississippi.
February 13, 1980.
Jim Waide, West Point, for appellant.
Mauldin, Sneed & Mauldin, William M. Mauldin, Pontotoc, Ward A. Busey, Houston, Tex., for appellee.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
*923 COFER, Justice, for the Court:
This case is here on appeal by Ollie E. Stauffer from a decree of the Chancery Court of Webster County adjudging him to be in contempt of court for noncompliance with a decree requiring him to make alimony, child support, and installment payments, and providing visitation rights with a child born to his union with Mrs. Ann H. Stauffer, the appellee. These requirements and rights were incorporated in the decree severing the marital ties between the parties.
The decree of divorce gave to appellee the paramount custody of the child here involved, with rights in appellant to have his care a month in the summer and a week at Christmas in addition to the right to the appellant to visit the child.
The divorce decree was entered June 13, 1977. Appellant married again on June 22, 1977. On August 12, 1977, he filed a petition to modify the decree as to its support and custody provisions.
In the summer of 1977 the month's visitation of the child with appellant began on June 18, a visit that was ended August 22, 1977, after appellee had employed a Texas attorney and after she and he had associated a Tennessee attorney where appellant and the child were sojourning. The surrender of the child to appellee came, in Tennessee, after a habeas corpus suit was begun there.
About November 28, 1977, on the eve of the beginning of Chancery Court in Webster County, appellant went to Houston, Texas, where the child was living with appellee, and, by devious procedures (using a motor van not his own, and his and his wife's wearing of wigs included), he spirited the child away from its mother, the appellee, and took him away.
At the beginning of the term of court, appellee and her Texas attorney were in attendance, and filed a petition for writ of habeas corpus to regain custody of the child and also filed a petition for contempt citation. There was an agreement, never incorporated in a decree, that appellant's petition for modification would be dismissed without prejudice, that appellee's habeas corpus petition would be abandoned, and appellee's contempt petition was set for the March 1978 term. On the same day, December 12, 1977, the child was returned to appellee, with whom, as far as reflected by the record, he has since been.
In her petition for contempt citation, she alleged that she had been put to attorney, travel, telephone, and lodging expense in the amount of $5,489.43, which she detailed in the petition, owing to the two occasions of appellant's taking and keeping the child *924 contrary to the decree of the court. She asked reimbursement for all of the same.
At the conclusion of the contempt hearing, the court rendered opinion that appellant was in civil contempt of court in his actions, as noticed hereinabove, and, by decree subsequently entered, she required repayment of $4,275 of the fees for attorneys which appellee had incurred due to appellant's contemptuous actions, and that he be imprisoned until he had purged himself of the contempt by paying the $4,275. The decree also required that he post a cash deposit of $2,000 with the Court Clerk before his next visit with the child outside appellee's home.
On August 14, 1978, appellant filed a new petition for modification of the June 13, 1977, decree, praying that he be relieved of certain monetary amounts fixed in the earlier decree and in other respects.
The chancellor denied the relief he sought in that petition.
Appellant has accordingly taken this appeal, and assigns numerous errors:
1. The court erred in awarding $4,275 in attorney's fees and expenses to Ann's attorney for prosecuting the contempt action.
2. The chancellor denied Ollie liberty without due process of law, ordering him committed to jail until the $4,275 was paid.
3. The chancellor erred in trying Ollie for criminal contempt without affording him the protection of constitutional criminal procedure.
4. The chancellor erred in finding Ollie guilty of contempt.
5. The chancellor erred in refusing to relieve Ollie of the obligation to make the trailer payments, effective the date of the divorce.
6. The chancellor erred in refusing to eliminate the alimony allowed.
7. The chancellor erred in refusing to reduce the child support obligation.
Noticing the first of these assignments we recognize the ever-recurring activity of contemnors to put themselves in compliance with decrees between the filing of the petition and the time of its hearing, leaving the petitioner with no violation of the decree about which longer to complain. Here, the chancellor made the award of $4,275 to appellee on the proof that she was forced to extensive legal steps in Texas, Tennessee, and Mississippi, requiring attorneys in all three states. (She allowed substantially less than the combined attorney fees alone). That all of this financial arrangement was occasioned by appellant's activity to which were added his efforts to procure relief from the decree leaves no basis for division of mind.
Griffith, Mississippi Chancery Practice, Section 666, (2d ed. 1950), cited as authority in Masonite Corporation v. International Woodworkers, 206 So.2d 171, 178 (Miss. 1967), says, in treating of criminal and civil contempt:
... In the first [criminal contempt] the punishment is for a past offense and must be suffered; in the second [civil contempt] the contemnor can discharge himself by paying the costs and expenses and doing what he had previously refused to do. ... (Emphasis added).
We find no reversible error in any of the matters assigned as error and affirm the decisions and decrees.

ON MOTION FOR FEE ON APPEAL
The appellee has moved for allowance of attorney fees on appeal, praying that she be allowed fee "either at the usual rate of one-half the amount allowed by the chancellor, or else, that this Court set the fee at whatever amount the Court deems to be reasonable."
It is this Court's usual procedure, as pointed out by appellee, to fix such appellate fee, when allowed, at one-half the fee ordered by the lower court. We have maturely considered the record here, and allow a fee, but reluctantly fix the amount at $1,500. We do this because there is in the lower court fee legal activity or diligent preparation therefor, in three states, and there were involved, by the very geographical *925 nature of this activity, multiple attorneys. We are of the view that appellee is entitled to a fee to be paid by appellant. At the same time, equity must enter into our fixing of the amount therefor.
AFFIRMED, AND MOTION FOR APPELLATE FEE SUSTAINED AND $1,500 ALLOWED THEREFOR.
PATTERSON, C.J., and SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.