984 So.2d 364 (2008)
Kim Lashan GILLILAND, Appellant/Cross-Appellee,
v.
Roger Neal GILLILAND, Appellee/Cross-Appellant.
No. 2006-CA-02110-COA.
Court of Appeals of Mississippi.
June 10, 2008.
*365 Jana L. Dawson, J. Mark Shelton, Attorneys for Appellant.
Richard C. Roberts, Jackson, David Bridges, Attorneys for Appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. Kim and Roger Gilliland were granted a divorce in July 2005. Roger was awarded primary custody of their two sons. Kim, subsequently, filed a complaint for modification of custody. Kim also complained that Roger was in contempt due to his interference with her relationship with the children. The chancellor declined to modify custody and declined to find Roger in contempt. Aggrieved, Kim appeals, and Roger cross-appeals. Finding no error, we affirm the chancellor's judgment, but we remand this case for clarification of Kim's visitation schedule.

FACTS AND PROCEDURAL HISTORY
¶ 2. Kim and Roger were married in 1997. They had two sons, Brandon and Shawn. Kim and Roger's marriage deteriorated, and the Oktibbeha County Chancery Court granted a divorce in July 2005. The chancellor awarded Roger primary custody of the children, and Kim received visitation rights. Kim appealed the chancellor's decision, and this Court affirmed in Gilliland v. Gilliland, 969 So.2d 56 (Miss. Ct.App.2007), cert. denied, 968 So.2d 948 (Miss.2007).
*366 ¶ 3. While that opinion was pending, Kim filed three separate complaints for modification of custody. The chancellor denied Kim's first complaint on October 21, 2005. Kim appealed, but later she voluntarily dismissed her appeal. Kim filed her second complaint for modification of custody on February 3, 2006. To summarize, Kim submitted that modification was appropriate due to Roger's behavior toward her. According to Kim, Roger's animosity toward her resulted in a material change in circumstances adverse to the best interests of the children. The chancellor conducted a hearing on Kim's complaint in May and June 2006. At the close of Kim's case-in-chief, Roger successfully moved for a directed verdict. In his July 27, 2006, order, the chancellor noted that Kim failed to present sufficient evidence necessary to modify custody. However, the chancellor modified the manner in which the children were to be exchanged. The chancellor also modified Kim's visitation schedule.
¶ 4. Incident to the chancellor's decision to modify Kim's visitation schedule, Roger filed a motion for clarification. Kim filed a motion to reconsider the decision to decline modification of custody and to decline to find Roger in contempt. On October 6, 2006, the chancellor ordered that Kim would not be allowed Wednesday night visitation during June or July. Afterwards, Roger filed a second motion for clarification. Kim filed a response and argued that the chancellor need not further clarify his previous order. On November 29, 2006, the chancellor entered an order and overruled "all post-trial motions." Kim appeals the chancellor's decision to deny modification of custody and to decline to find Roger in contempt. Roger cross-appeals the chancellor's decision to modify Kim's visitation schedule. Additional facts will be discussed as necessary.

ANALYSIS
I. WHETHER THE CHANCELLOR ERRED WHEN HE GRANTED ROGER'S MOTION FOR A DIRECTED VERDICT.[1]
¶ 5. Kim first claims the chancellor erred when he granted Roger's motion for a directed verdict. It is important to note that the chancellor sat without a jury. Under the circumstances, the chancellor was not required to consider the evidence in the light most favorable to Kim. Mitchell v. Rawls, 493 So.2d 361, 362 (Miss. 1986). Likewise, the chancellor was not required to give Kim the benefit of all reasonable inferences from the evidence. Id. In Mitchell, the supreme court stated that:
If, considering the evidence fairly, as distinguished from in the light most favorable to the plaintiff, the trial judge would find for the defendant  because plaintiff has failed to prove one or more essential elements of his claim, because the quality of the proof offered is insufficient to sustain the burden of proof cast upon the plaintiff, or for whatever reason  the proceeding should be halted at *367 that time and final judgment should be rendered in favor of the defendant.
Id. at 362-63 (citation omitted). If in doubt, the chancellor "generally ought to deny the motion to exclude and dismiss but such is the exercise of sound discretion, not obligation imposed by law." Id. at 363.
¶ 6. The chancellor's decision to grant a directed verdict implicated Kim's complaint for modification of custody and her complaint for contempt. However, on appeal, Kim focuses her argument under this issue solely on her complaint for modification of custody. Thus, our analysis will strictly pertain to whether the chancellor erred when he granted Roger's motion for a directed verdict incident to Kim's complaint for modification of custody.
¶ 7. It is well established in this state that in order to succeed in an attempt to modify custody, the noncustodial parent must show: (1) a material change in circumstances has occurred since the issuance of the judgment or decree sought to be modified, (2) the change adversely affects the welfare of the child, and (3) the proposed change in custody would be in the best interest of the child. Lambert v. Lambert, 872 So.2d 679, 683-84(¶ 18) (Miss.Ct.App.2003). In making this determination, the totality of circumstances must be considered. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). As in any custody modification determination, the polestar consideration is the well-being of the minor child. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). We may reverse only if the chancellor abused his discretion, and the decision was manifestly wrong or clearly erroneous. Horn v. Horn, 909 So.2d 1151, 1159(¶ 20) (Miss.Ct. App.2005). "The word `manifest,' as defined in this context, means `unmistakable, clear, plain, or indisputable.'" Lowrey v. Lowrey, 919 So.2d 1112, 1118(¶ 21) (Miss. Ct.App.2005) (citation omitted).
¶ 8. Though Kim raised a long litany of instances to demonstrate a material change in circumstances adverse to the best interests of the children, those instances are primarily centered on the prospect that Roger engaged in a pattern of parental alienation and that the ongoing conflict between Kim and Roger is detrimental to the best interests of the children. Kim seems to suggest that Roger is solely to blame for their arguments. Roger claims that Kim has a vested interest in maintaining a volatile relationship with him because she is attempting to manufacture grounds to demonstrate a material change in circumstances adverse to the best interests of the children.
¶ 9. We cannot find that the chancellor committed a manifest abuse of discretion when he declined to find a material change in circumstances. Kim points out that the chancellor found that she and Roger "let their feelings for one another adversely affect their sons." Truly, there can be no doubt that it is in the best interests of the children for their parents to maintain a peaceful and harmonious relationship. The chancellor did not find that the adverse effect was due to a material change in circumstances that occurred in Roger's home. In all fairness, the record indicates that Kim and Roger have had a volatile relationship throughout this considerable litigation. A welcome change in the children's circumstances would be the absence of a volatile relationship between Kim and Roger.
¶ 10. Notwithstanding having found that the chancellor did not err when he declined to find a material change in circumstances, it bears mentioning that even if there had been a change in circumstances, there was no evidence that the children suffered an adverse effect. The *368 chancellor noted that Shawn and Brandon were doing well in school. Shawn had A's and B's on his report card and Brandon was "at the top of his class." Kim claimed that Shawn was overweight, had gastrointestinal problems, and personal hygiene problems. However, Shawn's gastrointestinal problems and hygiene issues seem to have been passing problems at best. There was testimony from disinterested witnesses that Shawn no longer had the same problems. There was no testimony that Shawn's weight gain of eleven pounds over several months was unusual for a boy his age.
¶ 11. The chancellor could have considered that part of Shawn's weight gain was attributable to Kim, as Kim carried Shawn food when he refused to eat what was served in the school cafeteria. Despite having testified that Shawn was "very, very hefty," Kim also testified that when he refused to eat lunch at school, she "walked in that school with him crying because he didn't have anything to eat before and had to run to the convenience store to get him a corn dog." Roger testified that he does not object to Kim carrying Shawn food, but he objected to her carrying Shawn food that had little nutritional value, such as hamburgers, fries, and candy.
¶ 12. Kim claims that it is reasonably foreseeable that her problems with Roger will have an adverse impact on the children. Our supreme court has indicated that under certain circumstances, adverse effects can be shown where it is reasonably foreseeable that a child will suffer adverse effects because a child's present custodial environment is clearly detrimental to his or her well-being. The Mississippi Supreme Court has held that:
where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. Evidence that the home of the custodial parent is the site of dangerous and illegal behavior, such as drug use, may be sufficient to justify a modification of custody, even without a specific finding that such environment has adversely affected the child's welfare. A child's resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.
Riley v. Doerner, 677 So.2d 740, 744 (Miss. 1996). In Riley, evidence established that the custodial parent's home was the site of illegal drug use. Id.
¶ 13. In Johnson v. Gray, 859 So.2d 1006 (Miss.2003), the supreme court applied language from Riley and held that a chancellor may satisfy the "adverse effects" finding required in custody modification by finding reasonably foreseeable adverse effects if the child continues in the adverse environment. Johnson, 859 So.2d at 1014(¶ 39). The reasonably foreseeable adverse effects in Johnson were due to the mother's "involve[ment] in car accidents, arrests, and fits of rage, all attributable to her alcoholic stupors." Id.
¶ 14. In Glissen v. Glissen, 910 So.2d 603, 611(¶ 25) (Miss.Ct.App.2005), this Court affirmed a chancellor's decision to modify custody based on the prospective adverse effect language stated in Riley. In Glissen, the modification of custody was based on the mother's live-in boyfriend's "[adverse] [e]ffect [on] the girls because [the boyfriend] refused to exercise full visitation rights with his own children, because the evidence showed that [the boyfriend] abused drugs and alcohol and became violent, and because [the boyfriend] was a convicted felon." Id. at 612(¶ 29). However, the mother's relationship with her boyfriend was not the *369 sole basis behind the chancellor's decision to modify custody. Id. The chancellor also found that the mother was untruthful, that she had questionable judgment, that "she only pretended to be interested in morals[,]" and that the children "were innocent and at an impressionable age." Id.
¶ 15. In Savell v. Morrison, 929 So.2d 414, 419(¶ 17) (Miss.Ct.App.2006), this Court again affirmed a chancellor's decision to modify custody based on a reasonably foreseeable adverse effect as a result of a material change in circumstances. In Savell, the mother's new husband "indicated he was prepared to go to jail in the event that he `snapped' and whipped" the child. Id. at 416(¶ 6). The new husband "confirmed that he hollered[,] `I don't give a f  what you like[,]' when [the child] asked him to turn down the car radio." Id. The new husband further "indicated that it was his belief, after talking to an attorney, that he could yell at [the child] whenever he wanted." Id. at 416-17(¶ 6). He admitted he screamed at [the child] on an almost daily basis. Id. at 417(¶ 6). Not only that, the new husband admitted he wanted to "duct tape [the child] to a chair" and "repeatedly hit, or `pepper,' [the child] with paintballs." Id. Finally, the new husband threatened the child with a belt after she talked back to her mother, "scaring [the child] to the point that she turned white." Id.
¶ 16. Here, we cannot find that the chancellor erred when he declined to modify custody based on some reasonably foreseeable adverse effect on the child based on a material change in circumstances. The evidence here does not begin to approach the evidence in Riley, Johnson, Glissen, or Savell. The chancellor was intimately familiar with the Gillilands. They had been before him many times-often having raised the same issues. The chancellor found that he addressed the same substantial issues incident to Kim's complaint to modify custody, which resulted in his October 25, 2005, order. We have only a comparatively cold record to review; while the chancellor had been involved in the Gillilands' ongoing legal wrangling for some time. He was certainly within his discretion when he found no discernable adverse effect on the children.
II. WHETHER THE CHANCELLOR ERRED WHEN HE DECLINED TO MODIFY CUSTODY.
¶ 17. We addressed the substance of this question in the issue above. There is no need to reconsider it here.
III. WHETHER THE CHANCELLOR ERRED WHEN HE DECLINED TO FIND ROGER IN CONTEMPT.
¶ 18. The chancellor found that Kim and Roger both visited their children at school "uninvited contrary to the [c]ourt's initial order" and that they "continue[d] to have a volatile relationship and let their feelings for one another adversely affect their sons." The chancellor further found that "Roger continues to sleep with his sons although Brandon and Shawn have their own beds," that "Roger discusses family matters with his sons which were more appropriately discussed with Kim such as telling the sons that Kim should contact her attorney," and that "Roger has violated the spirit of the previous orders of this [c]ourt by making it difficult for Shawn and Brandon to talk to their mother by telephone." However, the chancellor stated that he did not find Roger in contempt "because there is no appropriate sanction available to the [c]ourt for Roger's violation."
¶ 19. Kim claims the chancellor erred when he did not find Roger in contempt. Whether a party is in contempt is a question of fact to be decided on a case-by-case basis. R.K. v. J.K., 946 So.2d 764, 777(¶ 39) (Miss.2007). A chancellor has substantial discretion in deciding contempt *370 matters because of the chancellor's "temporal and visual proximity" to the litigants. Mabus v. Mabus, 910 So.2d 486, 491(¶ 20) (Miss.2005).
¶ 20. We do not find that the chancellor abused his substantial discretion. The chancellor asked counsel for Kim "what would you have me do to Mr. Gilliland." Counsel responded that the chancellor should find that there had been a material change in circumstances. However, that is not an appropriate remedy in the context of a civil contempt action. Fines for civil contempt "are payable to the party injured by noncompliance with the court's order and are related to, and ordinarily should not exceed, the injured party's proved losses and litigation expenses, including counsel fees." Morris v. Walden, 856 So.2d 705, 708(¶ 10) (Miss.Ct. App.2003). Kim's contempt allegations were centered on Roger's interference with her telephone visitation and Roger's inability to set aside the volatile relationship that he and Kim shared. Kim did not prove that Roger caused her to experience any monetary losses.[2]

ISSUE ON CROSS-APPEAL
WHETHER THE CHANCELLOR ERRED WHEN HE MODIFIED KIM'S VISITATION SCHEDULE.
¶ 21. The chancellor amended the visitation schedule and added a provision that "[w]hile school is in session, Kim may exercise her visitation by taking custody of the children at school at the conclusion of the school day and returning the children to the school at on [sic] the day next succeeding the termination of her visitation." Roger claims the chancellor erred in amending the visitation schedule.
¶ 22. A chancellor may modify visitation provisions if there is a showing that the prior decree for reasonable visitation is not working. Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986). This Court will affirm such a modification if the decision was supported by substantial evidence. Bratcher v. Surrette, 848 So.2d 893, 897(¶ 21) (Miss.Ct.App.2003).
¶ 23. According to Roger, the chancellor's modification was inappropriate because neither party requested a modification of visitation, and neither party presented evidence that the visitation schedule warranted modification. The chancellor could have found that due to the volatile relationship between the parties, circumstances dictated minimization of contact between Kim and Roger during visitation exchanges. Given the chancellor's discretion, we do not find reversible error.
¶ 24. Roger argues that the new visitation provision is ambiguous, and it creates conflict. Roger contends that:

*371 For example, Kim claims that if a Friday or Monday holiday (e.g., Good Friday, Memorial Day, Labor Day) falls immediately before or after her weekend of visitation, the modified Opinion and Judgment awards her that holiday as well, even though the divorce decree awarded her visitation during Labor Day and Memorial Day only in even-numbered years.
As another example, the divorce decree awarded Kim Wednesday-evening visitation from 3:00 p.m. until 6:00 p.m. Kim claims that the language in the modified Opinion and Judgment extends this visitation from 3:00 p.m. Wednesday until the beginning of school the following Thursday morning.
More significantly, Kim claims that if school does not resume the following Thursday morning, she was awarded visitation until school resumes. Thus, although Roger was awarded custody of the children during their Spring Break and Fall Holiday vacations, Kim now claims that during the week-long Spring Break and the Fall Holiday vacations, the Opinion and Judgment "clearly" terminated Roger's custody of the children at 3:00 p.m. on Wednesday, and that the Court intended that she have custody of the children until school resumed after said vacations on the following Monday.
(Emphasis in original, citations to the record omitted). According to Roger, he must either "accede to Kim's strained interpretation" of the chancellor's opinion "or else refuse her the visitation to which she considers herself entitled, thus spawning another round of litigation."
¶ 25. Roger's interpretation of Kim's claims stem from Kim's response to Roger's motion for clarification of the chancellor's order. The chancellor did not expressly adopt or disclaim Kim's interpretation of the amended visitation provisions. Considering the likelihood of additional litigation between Roger and Kim, we find it necessary to remand this question to the chancellor for resolution. The chancellor is to be commended for his efforts to establish a peaceful coexistence between Roger and Kim, and he is in the best position to interpret the visitation provision at issue. Accordingly, we affirm the chancellor's decision to modify the visitation, but we must remand for clarification.
¶ 26. THE JUDGMENT OF THE OKTIBBEHA COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. CHANDLER, J., CONCURS WITH SEPARATE WRITTEN OPINION.
CHANDLER, J., Concurring.
¶ 27. I respectfully concur with the majority's resolution of the issues on appeal, but I write separately to express my misgivings about this Court's decision to caution Roger about the consequences that might result from his future violation of court orders. The majority advises Roger that his future disruptions of Kim's court-ordered telephone visitation could result in his being held in civil contempt, and the future disruptions could even result in his being held in criminal contempt. In my opinion, this language is wholly unwarranted. Simply put, the chancellor did not find Roger in contempt. It is premature for us to discuss what could happen if, in the future, Kim filed another petition for citation *372 of contempt based on some future conduct by Roger.
¶ 28. I understand that the majority's inclusion of the problematic language was prompted by the chancellor's statements that "Roger has violated the spirit of the previous orders of this Court by making it difficult for Shawn and Brandon to talk to their mother by telephone" and that "[t]he Court does not find Roger to be in contempt of this Court because there is no appropriate sanction available for Roger's violation." It appears that the majority construes this language to mean that the chancellor would have held Roger in contempt, but he only failed to do so because no appropriate sanction was available. I would not impart this meaning to the chancellor's statements because, fundamentally, there was no finding of contempt. I observe that during the hearing, Kim's attorney did ask Kim what remedy she desired if the chancellor held Roger in contempt, and she responded that she wanted him to pay her attorneys' fees. The learned chancellor certainly was aware of the existence of that remedy for civil contempt; however, he believed no remedy appropriate for Roger's particular violations of the "spirit" of the prior orders. The testimony established that while Kim's telephone visitation was disrupted by Roger on some instances, the majority of the time Kim achieved her telephone visitation. It is manifestly apparent that the chancellor simply did not believe that Roger's conduct warranted a contempt finding.
¶ 29. Our appellate courts generally take a lenient approach when reviewing the decisions of a chancellor in contempt proceedings. Smith v. Smith, 545 So.2d 725, 727 (Miss.1989) (citing Walters v. Walters, 383 So.2d 827, 829 (Miss.1980) (affirming the chancellor's refusal to hold a party in contempt, although the chancellor also correctly found that the party was in violation of a court order to pay child support)). In this case, the chancellor's statements do not reflect any misunderstanding of the law that would call for this Court to provide instruction on the remedies for contempt of court, as the majority takes it upon itself to do. Given the parties' extensive litigation history, it is fairly predictable that it would take scant provocation to engender a new round of motions for a modification of a prior court order and petitions for citation of contempt. I believe the majority's language to be imprudent because it only serves as an invitation for further litigation between these parties over the minutiae of their court-ordered custody and visitation arrangement.
NOTES
[1] Counsel for Kim styled this issue as such, but we note that, pursuant to Mississippi Rule of Civil Procedure 41(b):

[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.
As the chancellor sat without a jury, the proper procedural mechanism for Roger's request was a motion to dismiss pursuant to Rule 41(b), rather than a motion for a directed verdict pursuant to Mississippi Rule of Civil Procedure 50(a).
[2] We caution Roger that should he continue to disrupt Kim's court-ordered telephone visitation or otherwise violate the chancellor's orders, the chancellor may find him in civil contempt. Miss.Code Ann. §§ 9-1-17 (Rev. 2002); 9-5-87 (Rev.2002). Civil contempt is intended to preserve and enforce the rights of individuals. Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss.1987). Should the chancellor find Roger in civil contempt, the chancellor may order him to pay a monetary figure, including costs and expenses. Stauffer v. Stauffer, 379 So.2d 922, 924 (Miss. 1980). Additionally, should Roger be found in civil contempt, the chancellor may order that Roger be incarcerated until he complies with the order. Id. Roger should also be aware that violations of the chancellor's orders could result in his being found in criminal contempt. Should the chancellor find Roger in criminal contempt, the chancellor may fine Roger or order him incarcerated for a definite period of time. Common Cause of Mississippi v. Smith, 548 So.2d 412, 415-16 (Miss.1989). When one is incarcerated for criminal contempt, no amount of compliance will shorten that period of incarceration. Id.