# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01091-COA

**W. FRED HORNSBY, III**                                                          **APPELLANT**

**v.**

**JANE BURGUNDY HORNSBY**                                                  **APPELLEE**

DATE OF JUDGMENT:                  08/10/2020
TRIAL JUDGE:                             HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:   HARRISON COUNTY CHANCERY COURT,
                                                 SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          W. FRED HORNSBY III (PRO SE)
ATTORNEY FOR APPELLEE:            SCOTT DERRICK SMITH
NATURE OF THE CASE:                 CIVIL - DOMESTIC RELATIONS
DISPOSITION:                             AFFIRMED - 12/13/2022
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     W. Fred Hornsby III (Fred) and Jane Burgundy Hornsby (Burgundy) are the divorced

parents of two children.  In this appeal, Fred argues that the chancery court erred by denying

his petition for a reduction in child support, by not holding Burgundy in contempt, and by

awarding attorney's fees to Burgundy.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2017, the Harrison County Chancery Court granted Burgundy a divorce from Fred

on the ground of adultery.  The parties subsequently agreed that Burgundy would have

physical custody of their two children, that Fred would have visitation, that they would share

joint legal custody, and that Fred would pay $2,500 per month in child support.  The court

incorporated the parties' agreement on these issues into its final judgment. The parties' children were approximately ten years old and eight years old at the time of the divorce.

¶3. In January 2018, Fred filed a petition to modify custody and a petition for contempt against Burgundy. Fred alleged that Burgundy's then-recent move from Biloxi to Texas was a material change in circumstance that adversely affected the children. In the alternative, Fred asked the court to modify his visitation schedule and reduce his child support due to the increased cost of visitation. He asked the court to find Burgundy in contempt for failing to communicate with him about the children's activities and parenting decisions.

¶4. In October 2018, following a hearing, the court denied Fred's petition to modify custody but modified his visitation schedule. The court also reduced Fred's child support payments to $1,250 for June and July (when the children were to live with Fred), reduced Fred's share of the children's out-of-pocket medical expenses from 100% to 50%, and ordered the parties to split the children's visitation-related travel costs.

¶5. In June 2019, Fred filed a second petition to modify custody or, in the alternative, to modify child support. Fred alleged that Burgundy refused to communicate with him, that she was attempting to alienate their children from him, and that her actions were "child abuse." He further alleged that Burgundy's actions constituted a material change in circumstances that adversely affected the children. In the alternative, Fred requested additional visitation and a reduction in child support. Fred, an attorney, alleged that he had experienced a reduction in income from his law practice. He also alleged that the costs of his "family

2

needs" had increased. Fred had remarried in 2018, and he and his current wife had a new child. Finally, Fred requested that the court find Burgundy in contempt and award him attorney's fees based on Burgundy's "willful failure to provide [him] with any information related to the children's schooling, medical or otherwise and . . . failure to reimburse [him] for one half of the travel expenses for the children."

¶6. In her answer, Burgundy denied that she was in contempt and alleged that Fred's allegations were baseless and made only for the purpose of "harassment." Burgundy requested attorney's fees under Mississippi Rule of Civil Procedure 11 and the Mississippi Litigation Accountability Act, Miss. Code Ann. §§ 11-55-1 to -15 (Rev. 2019).

¶7. In November 2019, Fred voluntarily dismissed his request to modify custody. The case was then tried over the course of four days in December 2019 and June 2020.

¶8. In August 2020, the chancery court entered a final judgment denying Fred's request for a reduction in child support and his petition to hold Burgundy in contempt. In addition, the chancellor found that Fred's contempt petition was "vexatious, without substantial justification, and filed for the purpose of harassment against [Burgundy]." Based on this finding, the chancellor awarded Burgundy $9,196.64 in attorney's fees under Rule 11 and the Litigation Accountability Act.

¶9. Fred filed a motion for reconsideration, which the chancellor denied, and a notice of appeal. On appeal, Fred argues that the chancellor erred by denying his request for a reduction in child support, by finding that Burgundy was not in contempt, and by awarding

3

Burgundy attorney's fees.

## ANALYSIS

### I. Child Support

¶10.    On appeal, Fred argues that the chancellor erred by denying his request for a reduction in child support. Specifically, Fred argues that the chancellor erred (1) by excluding facts or evidence that were or could have been presented in litigation leading up to the prior (October 2018) judgment on child support, (2) by considering his "access to credit" in denying his request for a reduction, and (3) by considering purchases or expenditures by him and his new wife as evidence of his ability to pay child support.

¶11.    We begin by noting that "an award of child support is a matter within the discretion of the chancellor and . . . will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." *Williams v. Williams*, 264 So. 3d 722, 726-27 (¶12) (Miss. 2019) (quoting *Clausel v. Clausel*, 714 So. 2d 265, 266 (¶16) (Miss. 1998)). "Furthermore, the process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id.* at 727 (¶12) (brackets and quotation marks omitted).

¶12.    "The underlying principle regarding child support is the legal duty owed by the parents to the child for the child's maintenance and best interests." *Adams v. Adams*, 467 So. 2d 211, 215 (Miss. 1985). Although child support payments are made to the custodial parent, the payments are for the benefit of the child. *Id.* Our law requires each spouse to "provide

4

financially for his or her children, given his or her resources and opportunities." *Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990).

¶13. A chancellor may modify child support if there has been "a substantial or material change in the circumstances of one or more of the interested parties . . . arising subsequent to the entry of the decree to be modified." *Edmonds v. Edmonds*, 935 So. 2d 980, 987 (¶19) (Miss. 2006) (quoting *Caldwell v. Caldwell*, 579 So. 2d 543, 547 (Miss. 1991)). The change must be one that could not have been "reasonably anticipated" at the time of the prior support order. *Poole v. Poole*, 701 So. 2d 813, 818 (¶19) (Miss. 1997) (quoting *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995)). The change also must be one that materially affects the moving party's ability to meet his child support obligations. *Id.* at (¶21). The court may consider the parties' respective financial conditions and earning capacities in determining whether a material change in circumstances has occurred. *Bailey v. Bailey*, 724 So. 2d 335, 337 (¶7) (Miss. 1998). The party requesting a modification bears the burden of proving that there has been a material change in circumstances since the prior support order. *Stephens v. Stephens*, 328 So. 3d 760, 767 (¶14) (Miss. Ct. App. 2021).

¶14. Fred's first sub-argument challenges the chancellor's in limine ruling excluding "[a]ny testimony or evidence regarding events, facts, documents, or other allegations that . . . were or could have been raised" prior to the 2018 support order. The chancellor reasoned that such evidence was irrelevant or would involve claims barred by res judicata. Fred makes a general argument that the chancellor's ruling prevented him from establishing a baseline

5

against which to measure his alleged loss of income. He also seems to suggest that the chancellor's ruling prevented him from introducing his 2018 tax returns. However, Fred's 2017 and 2018 tax returns were admitted into evidence, Fred's law partner testified in detail regarding their firm's financial performance in 2017 and 2018, and the chancellor considered this evidence in his final ruling. Moreover, Fred fails to identify any specific evidence that was excluded as a result of the chancellor's in limine ruling. "When a trial court prevents the introduction of certain evidence, it is incumbent on the offering party to make a proffer of the [evidence,] or the point is waived for appellate review." *Redhead v. Entergy Miss. Inc.*, 828 So. 2d 801, 808 (¶19) (Miss. Ct. App. 2001) (quoting *Lloyd v. State*, 755 So. 2d 12, 14 (¶9) (Miss. Ct. App. 1999)). Here, Fred not only failed to make a proffer at trial but also fails to specify on appeal what relevant evidence was excluded. Accordingly, any such argument is waived.

¶15. In his second sub-argument, Fred claims that the chancellor erred by considering his "access to credit and cash flow" when denying his request for a reduction in child support. Indeed, Fred argues that the chancellor made this access "the main factor in deciding NOT to reduce [Fred's] child support." In his third sub-argument, Fred makes a related claim that the chancellor erred by citing joint purchases by Fred and his current wife as evidence of Fred's continued ability to pay. We disagree.

¶16. The chancellor's order methodically analyzes all ten factors that *Adams*, 467 So. 2d at 215, identifies as potentially relevant to a request to modify child support. The chancellor

6

found that Fred's income as a self-employed attorney in a two-lawyer firm was "more likely to fluctuate than [Burgundy's income]," although Fred also received a salary for his position as a municipal prosecutor, National Guard pay, and rental income. The chancellor noted Fred's access to credit primarily in connection with his fluctuating income from his private law practice. But the chancellor's primary point was that despite Fred's claim of a significant reduction in income, Fred failed to show any "corresponding reduction in his standard of living." The chancellor noted that Fred and his current wife had built a new waterfront home on the Back Bay in Biloxi, had recently purchased a new BMW, and generally continued to enjoy an "upscale lifestyle."

¶17. The chancellor also found that although Fred presented evidence that he earned less from his private law practice in 2018 than he had in 2017, he did not prepare or file his 2019 tax returns prior to the conclusion of the trial in June 2020. The chancellor ultimately found that Fred had presented insufficient evidence that he had experienced a substantial reduction in income rising to the level of a material change in circumstances since the prior order on child support, which was entered in October 2018.

¶18. This Court recently noted that a child support "payor who reports a reduction in income must show a corresponding reduction in standard of living." *Kelley v. Zitzelberger*, 342 So. 3d 499, 505 (¶16) (Miss. Ct. App. 2022) (quoting Deborah H. Bell, *Bell on Mississippi Family Law* § 13.11[7][a], at 546-47 (3d ed. 2020)). In *Kelley*, we affirmed the denial of a request for a reduction in child support based in part on evidence that the payor

7

and his current wife recently had purchased new cars and a new home. *Id.* at (¶17). We also noted that while a chancellor could not "use the income of [the payor's] current wife in calculating child support," the chancellor "could take into account her income contribution to [the payor's] household." *Id.* at 506 (¶19); *see also Stephens*, 328 So. 3d at 768 (¶17) (affirming the chancellor's decision not to reduce child support because, despite a reduction in income, the payor "had not reduced his standard of living"). Similarly, in *Holcombe v. Holcombe*, 813 So. 2d 700 (Miss. 2002), the Supreme Court affirmed a chancellor's finding that the payor failed to prove a material change in circumstances warranting a reduction in alimony because the payor's "lifestyle and spending habits indicate[d] [his] loss in [income] had no effect upon his purchasing decisions." *Id.* at 706 (¶32).

¶19.    Likewise, in this case, substantial evidence supports the chancellor's finding that any alleged reduction in Fred's income does not appear to have affected his standard of living or his spending habits. Even accepting Fred's Rule 8.05 financial statement[1] at face value, he reports a net monthly income of $9,198.16. Although Fred claimed a deficit on his Rule 8.05 statement, his statement included a number of expenses—including the mortgage and car payments—that Fred testified he actually "shared 50/50 with [his current] wife." Once his current wife's contributions are taken into account, there is no deficit. *See Kelley*, 342 So. 3d at 506 (¶19) (stating that a chancellor may "take into account [a payor's current spouse's] income contribution to [the payor's] household"). In short, whatever Fred's precise current

---

[1] UCCR 8.05.

income may be, substantial evidence supports the chancellor's finding that Fred's income is sufficient not only to meet his child support obligation but also to allow Fred and his current wife to live comfortably. Accordingly, we hold that the chancellor did not abuse his discretion by denying Fred's request for a reduction in child support.

## II. Contempt

¶20. Fred argues that the chancellor erred by not finding Burgundy in contempt for failing to communicate with him regarding the children and for failing to reimburse him for one-half of the children's travel expenses. In addressing Fred's arguments, we bear in mind that "[w]hether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Savell v. Manning*, 325 So. 3d 1208, 1220 (¶43) (Miss. Ct. App. 2021) (quoting *Gilliland v. Gilliland*, 984 So. 2d 364, 369 (¶19) (Miss. Ct. App. 2008)). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id.* (quoting *Gilliland*, 984 So. 2d at 369-70 (¶19)). This Court will affirm the chancellor's "factual findings . . . unless manifest error is present and apparent." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994).

¶21. In addition, "[t]he chancellor is the finder of fact, and the assessment of witness credibility lies within his sole province." *Darnell v. Darnell*, 234 So. 3d 421, 423-24 (¶8) (Miss. 2017) (quotation marks omitted). We "give[] deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *McNeese v. McNeese*, 119 So. 3d 264,

9

275 (¶32) (Miss. 2013) (quotation marks omitted). Therefore, when "there is conflicting testimony, the chancellor, as the trier of fact, is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." *Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008) (quotation marks omitted). "This Court will not substitute its judgment for that of the chancellor even if this Court disagrees with the [chancellor] on the finding of fact and might arrive at a different conclusion." *Sanderson v. Sanderson*, 170 So. 3d 430, 434 (¶13) (Miss. 2014) (brackets, ellipsis, and quotation marks omitted).

¶22. Regarding Burgundy's alleged failure to communicate, Fred introduced phone records showing no calls made from Burgundy to his phone for a period of more than thirty days in April and May 2019. These records also show several one-minute calls from Fred to Burgundy, which Fred says reflect calls that Burgundy did not answer. Burgundy introduced recordings of phone calls between her and Fred in which she told Fred that she could not talk to him during the workday, and Fred responded that he could not talk in the evening because he worked at night. Burgundy also introduced recordings of times that she called Fred but was unable to leave a voicemail because Fred had not set up his voicemail. Those calls apparently do not show up on Fred's phone records. In addition, Burgundy testified that she spoke to Fred in the evenings on occasion when he called their children via Facetime. Those conversations also would not have been reflected in Fred's phone records. The children had their own phones, Fred could call or Facetime them directly without going through

10

Burgundy, and Fred talked to both children regularly.

¶23. After considering the evidence, the chancellor found that "Fred ha[d] failed to prove by a preponderance of the credible evidence that Burgundy in any way willfully, intentionally, or purposely violated any of her court ordered obligations as to joint legal custody of her children . . . ." *See* Miss. Code Ann. § 93-5-24(5)(e) (Rev. 2021). The chancellor, in his role as the fact-finder, was entitled to find that Burgundy's testimony on this issue was more credible than Fred's testimony. *Darnell*, 234 So. 3d at 423-24 (¶8). And given the conflicting evidence and testimony presented at trial, we cannot say that the chancellor's finding was manifestly erroneous. *Bowen*, 982 So. 2d at 395 (¶42).

¶24. Fred's argument that Burgundy was in contempt because she failed to reimburse him for travel expenses fails for similar reasons. The October 8, 2018 judgment provides that "[t]he expenses incurred in the minor children traveling to and from Texas for visitation purposes shall be equally split between the parties." Fred alleged that Burgundy violated this provision by refusing to reimburse him for airplane tickets. However, Burgundy testified she understood that she and Fred were to alternate paying for the children's travel so that they would not have to reimburse each other. Burgundy testified that she had covered the cost of more than half of the children's trips, that she had never requested reimbursement for those expenses, and that Fred had never offered to reimburse her. In addition, Burgundy testified that Fred had never requested any reimbursement from her prior to filing the present petition for contempt. The chancellor found "that the parties [had] operated according to Burgundy's

11

testimony that neither would request payment from the other," which was "supported by Fred's very late payment demand presented finally and only in his [June 2019 contempt petition]." Suffice it to say that there was conflicting evidence on this issue, the chancellor was entitled to find Burgundy's testimony more credible, and we cannot say that the chancellor's finding of fact was manifestly erroneous.

### III. Burgundy's Attorney's Fees

¶25. Lastly, Fred argues that the chancellor erred by awarding Burgundy attorney's fees related to his petition for contempt. The chancellor found that Burgundy had incurred total attorney's fees of $29,875.39 defending the present action, including Fred's requests for modification. Burgundy had borrowed from her brother and sold assets in order to pay $17,618 of that amount, with the balance still owing. The chancellor found that Burgundy was entitled to an award of fees under Mississippi Rule of Civil Procedure 11[2] and the Litigation Accountability Act[3] because Fred's contempt petition was "vexatious, without

---

[2] Rule 11 provides in relevant part:

> If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.

M.R.C.P. 11(b).

[3] The Act provides in relevant part:

> Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part

12

substantial justification, and filed for the purpose of harassment against Burgundy." The chancellor found that although the "majority of this dispute ha[d] been about" Fred's request for a modification of child support, the $9,196.64 in attorney's fees for 43.8 hours were "reasonably related to the contempt issues." The chancellor therefore ordered Fred to pay that amount to Burgundy as a sanction.[4]

¶26. "This Court reviews a trial judge's award of sanctions under Rule 11 and the Litigation Accountability Act for abuse of discretion." *Collins v. Koppers Inc.*, 59 So. 3d 582, 591 (¶27) (Miss. 2011). "In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Id.*

¶27. Here, Fred's contempt petition ultimately turned on factual disputes and the

---

of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 11-55-5(1). For purposes of the Act, "without substantial justification" means "frivolous, groundless in fact or in law, or vexatious." *Id.* § 11-55-3(a).

[4] Fred asked the court to order Burgundy to pay him $18,400 for his own time spent on the case. Fred did not offer an itemized statement in support of his request but testified that he had spent over ninety-two hours on the case at $200 per hour. The chancellor denied Fred's request for attorney's fees.

chancellor's evaluation of the witnesses' credibility. As discussed above, the chancellor evaluated the witnesses' credibility and found that Fred's petition was without merit. Essentially, the chancellor found that Fred had falsely accused Burgundy of refusing to communicate with him and refusing to reimburse him for travel expenses. As to the travel expenses, the chancellor found that Fred had manufactured the issue by making a "very late payment demand presented finally and only in" the contempt petition itself. For the reasons discussed above, we have already determined that the chancellor did not manifestly err or abuse his discretion by finding that Fred's allegations were without merit. For essentially the same reasons, we cannot say that the chancellor manifestly erred or abused his discretion by finding that Fred's contempt petition was "vexatious, without substantial justification, and filed for the purpose of harassment against Burgundy."

¶28. In addition, although the chancellor awarded Burgundy attorney's fees related to Fred's contempt petition, the chancellor noted additional conduct by Fred during this litigation that suggested a purpose of harassment. For example, in pleadings and discovery responses, Fred alleged that Burgundy had committed unspecified "fraud," was mentally unstable, and posed a grave danger to her children and herself. He repeatedly referred to Burgundy as a "liar," stating, inter alia: "She lied to the Court regarding the needs of the children. She will lie and I will catch her in her lies this time, this Zebra can't change those stripes." However, Fred offered no evidence of fraud or evidence to support his other allegations. In addition, in July 2019, Fred left Burgundy a voicemail, which was introduced

14

at trial, in which he stated:

> Hi! This is Dub Hornsby calling on a recorded line. Just trying to figure out when you would like to receive your child support. Where you will be so you can receive it personally and sign for it.[5] Also, just left a great meeting with the Department of Public Service [sic]. You should be hearing from them soon—their enforcement division. Have a great day!

Although the award of attorney's fees to Burgundy was for fees related to Fred's allegations of contempt, the chancellor noted these additional incidents and accusations as further evidence of Fred's purpose and intent. Considering the evidence as a whole, we cannot say that the chancellor manifestly erred or abused his discretion.

## CONCLUSION

¶29. The chancellor did not manifestly err or abuse his discretion by denying Fred's request for a reduction in child support, by finding that Burgundy was not in contempt, or by awarding Burgundy attorney's fees.

¶30. **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. CARLTON, P.J., LAWRENCE AND SMITH, JJ., NOT PARTICIPATING.**

---

[5] Fred was attempting to serve a summons on Burgundy at the time.

15