MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Richard and Juanita Day were married on December 28, 1985, in Sunbury, Ohio. Two children were born to the marriage. Richard and Juanita were subsequently granted an irreconcilable differences divorce on July 10, 2008, in Lamar County, Mississippi. The parties executed a written property settlement agreement pursuant to the divorce, which was approved by the chancery court. Following the divorce, both parties ultimately returned to Ohio.
 
 [1]
 

 ¶ 2. On July 6, 2005, approximately two years after the divorce was entered, Juanita filed a complaint for contempt, alleging that Richard had violated the terms of the property settlement agreement. On December 1, 2005, Richard responded with his own complaint for contempt. Trial on the complaints was begun on December 14, 2006, but the matter was continued to allow Juanita to file an amended complaint. On November 27, 2007, the trial resumed, and it was ultimately concluded on February 22, 2008. On May 9, 2008, the chancery court entered a judgment, and on July 3, 2008, it entered a judgment on reconsideration.
 
 [2]
 
 Juanita appeals from this judgment.
 

 ¶ 3. The parties raised numerous issues at trial that were subsequently ruled upon by the chancery court, but only three are relevant for the purposes of this appeal. Juanita alleges that the chancellor erred: (1) in determining the equity Juanita should receive from the former marital residence pursuant to the property settlement agreement; (2) in determining the equity Juanita should receive from a 2000-model Coachman recreational vehicle (the RV) pursuant to the same agreement; and (3) in denying Juanita’s request for attorney’s fees.
 

 STANDARD OF REVIEW
 

 ¶ 4. Appellate review of domestic relation matters is limited.
 
 Carrow v. Carrow,
 
 741 So.2d 200, 202(¶ 9) (Miss.1999). We will not reverse unless the chancellor abused his discretion, was manifestly in error, or applied an erroneous legal standard.
 
 Id.
 
 (citation omitted). This is especially true when dealing with divorce, alimony, or child support.
 
 Sumrall v. Munguia,
 
 757 So.2d 279, 282(¶ 12) (Miss.2000).
 

 DISCUSSION
 

 1. Distribution of Equity in the Marital Home
 

 ¶ 5. The property settlement agreement provided that Juanita would receive
 
 *675
 
 the sole use and possession of the marital home following the divorce. Richard was to be responsible for all continuing expenses of the home, including the mortgage, insurance, utilities, and the like. The agreement also provided that Richard would immediately refinance the home, placing the mortgage in his name only, and pay $40,000 of the equity to Juanita. Title to the home would remain in both parties’ names.
 

 ¶ 6. Once Juanita vacated the marital home, the property settlement agreement provided that it would be listed for sale; upon sale, Richard would receive $30,000 of the proceeds after expenses, and Juanita would receive $10,000. Any remaining proceeds would be divided equally.
 

 ¶ 7. The property settlement agreement also provided that if the home had not sold within twenty-four months of the date of the final judgment of divorce, it would be appraised “by a mutually agreeable appraiser.” Richard would then buy Juanita’s remaining equity in the property, to be determined by equally dividing the difference of the present appraised value of the home and the debt existing prior to refinancing in 2003, “with a credit given for the $40,000 already disbursed to [Juanita]....”
 

 ¶ 8. Following the divorce, Richard refinanced the marital home and paid Juanita $40,000 of the equity, as provided for by the agreement. It is uncontroverted that the home was not sold within twenty-four months; Juanita continued to reside in it for approximately three years and two months after the divorce was entered.
 

 ¶ 9. Richard testified that he had attempted to have the home appraised in June or July 2005, but Juanita would not allow him access for an appraisal until he effected certain repairs to the home.
 
 [3]
 
 Juanita secured her own appraisal on May 25, 2006, which valued the property at $260,000. Juanita vacated the home in September 2006, and it was ultimately sold for $225,000 in March 2007. After the payoff of the mortgage and the expenses of the sale, approximately $36,000 of the proceeds remained.
 

 ¶ 10. The chancellor acknowledged that the property settlement agreement stated that, if the home was not sold within twenty-four months, it would be appraised, and Richard would purchase Juanita’s remaining equity. The chancellor nonetheless concluded that because of “[Juanita’s] failure to cooperate in a timely appraisal of the home,” she could not benefit from an appraisal taken almost a year after the time provided for in the agreement. The chancellor therefore found the “sale clause” of the property settlement agreement remained operative, and pursuant to that clause he awarded Juanita approximately $6,000 from the remaining proceeds of the home.
 
 [4]
 

 ¶ 11. On appeal, Juanita argues that the chancellor erred in not enforcing the agreement and awarding her equity based upon the May 25, 2006, appraisal, which valued the home at $260,000. Richard responds that no mutually agreed appraisal was ever conducted, and he argues that Juanita’s May 2006 appraisal of $260,000 was significantly higher than it would have been had it been conducted in July 2005, particularly because of the rise in property
 
 *676
 
 values in the Hattiesburg area following Hurricane Katrina.
 
 [5]
 

 ¶ 12. A “property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.”
 
 East v. East,
 
 493 So.2d 927, 931-32 (Miss.1986). Once approved by the chancery court, it will be enforced absent fraud or overreaching.
 
 Bell v. Bell,
 
 572 So.2d 841, 844 (Miss.1990). Our courts take a dim view of efforts to modify such agreements, “as we ordinarily do when persons seek relief from their improvident contracts.”
 
 Id.
 
 “A court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous.”
 
 Merchants and Farmers Bank of Kosciusko v. State ex rel. Moore,
 
 651 So.2d 1060, 1061 (Miss.1995).
 

 ¶ 13. On the other hand, “performance of a contract is excused, or may not be taken advantage of, when it is prevented by the acts of the opposite party....” 17B C.J.S.
 
 Contracts
 
 § 528 (1999) (citations omitted).
 

 ¶ 14. The chancellor found that Juanita had wrongfully prevented the marital home from being appraised in a timely fashion. We find Juanita’s argument— that the chancellor should have used the May 2006 appraisal value she offered — to be without merit; Juanita may not benefit from appreciation occurring during the eleven-month delay she was found to have caused. Additionally, because no evidence was offered as to what the property would have appraised for, had it been timely appraised, we can find no error in the chancellor’s decision. This issue is without merit.
 

 2. Distribution of Equity in the RV
 

 ¶ 15. The parties owned a 2000-model Coachman RV prior to divorce. The property settlement agreement provided that the RV would be listed for sale, and that any proceeds from the sale remaining after the loan payoff would be split equally between the parties. The agreement did not provide which party would be responsible for arranging for the sale.
 

 ¶ 16. Testimony at trial indicated that the RV had generally been in Richard’s possession following the divorce, but he had been unable to sell it despite various efforts. Richard testified that he did not expect to be able to sell the RV because it was worth less than the payoff value of the loan.
 

 ¶ 17. The chancellor found that the RV was a liability rather than an asset. He also found that no evidence had been offered that the RV had ever been a net asset. Finally, the chancellor held that because Richard had assumed responsibility for the RV, he should be awarded it and exclusively assume all associated debts and obligations.
 

 ¶ 18. On appeal, Juanita argues that the chancellor erred in not awarding her some equity in the RV.
 

 ¶ 19. Juanita’s first argument centers around the October 2004 refinancing of the RV. Richard testified that his obligation on the RV prevented him from being approved for a loan to purchase a home. Richard therefore secured a loan from his father and used it to pay off the debt from the RV. After purchasing the home, Rich
 
 *677
 
 ard took a loan against the RV for the same amount owed prior to the refinancing, using the proceeds to pay back his father. Juanita appears to argue that this transaction amounted to a sale of the RV, and that she was entitled to half the “proceeds,” meaning the funds received from the second loan. This argument is without merit.
 

 ¶ 20. Juanita also argues that she was unable to offer evidence of the RVs value because it was in Richard’s possession for much of the time following the divorce. This argument is without merit because, first, there were other ways of proving the value of the vehicle and, second, because there is no evidence in the record that Juanita ever attempted to arrange for an appraisal or to take possession of the vehicle.
 

 3. Attorney’s Fees
 

 ¶ 21. Juanita argues that the chancellor erred in not awarding her attorney’s fees. In divorce matters, the decision whether to award attorney’s fees is generally entrusted to the sound discretion of the chancellor.
 
 Tynes v.
 
 Tynes, 860 So.2d 325, 331(¶ 22) (Miss.Ct.App.2003). Unless the chancellor abuses his discretion, his decision will generally be upheld.
 
 Ladner v. Ladner,
 
 436 So.2d 1366, 1375 (Miss.1983).
 

 ¶ 22. On appeal, Juanita argues that the chancellor abused his discretion in failing to award attorney’s fees for several reasons. First, she points out that the chancellor found Richard to be in “wilful contempt” for his failure to transfer to her a 401 (k) account and certain “sky miles points” as provided for in the property settlement agreement. She also notes that the chancellor — without finding Richard in contempt as to these issues — nonetheless awarded her approximately $7,000 in other damages relating to the property settlement agreement, including car rental fees, hold-over lease payments for an automobile, moving expenses, storage fees, veterinary bills, medical bills, and expenses relating to the children’s activities.
 

 ¶ 23. Juanita is correct to argue that, where one party is found in contempt of a previous judgment, attorney’s fees are generally proper.
 
 Newell v. Hinton,
 
 556 So.2d 1037, 1043 (Miss.1990). However, in this case, although the chancellor did find Richard in contempt with regard to some of the issues presented, he was not uncritical of Juanita’s conduct, finding that she had acted in bad faith with regard to other issues. The chancellor also repeatedly criticized how both parties had conducted themselves following the divorce and over several years of post-divorce litigation.
 

 ¶24. “It is the function of the chancellor to weigh all of the facts and assess the circumstances and to award attorney’s fees accordingly.”
 
 O’Neill v. O’Neill,
 
 501 So.2d 1117, 1119 (Miss.1987);
 
 see also Hartley v. Hartley,
 
 317 So.2d 394, 395 (Miss.1975) (“It is especially true in divorce cases that circumstances alter cases and that the chancellor should have wide authority and discretion in setting appropriate attorney’s fees after carefully considering the facts of each case.”).
 

 ¶25. In considering Juanita’s request for attorney’s fees, the chancellor found that “this protracted litigation has resulted from some failure on the part of each [party] to implement the [property settlement] agreement in accordance with its own terms.” Despite finding Richard in contempt on some issues, the chancellor concluded that, on the balance, both parties should pay their own attorney’s fees. We find no abuse of discretion in so holding. This issue is without merit.
 

 ¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR
 
 *678
 
 COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Richard returned to Ohio in January 2004; Juanita followed in September 2006.
 

 [2]
 

 . The judgment on reconsideration added only that Juanita would be entitled to certain pre-judgment interest.
 

 [3]
 

 . Richard testified that, after securing a court order, he had the home appraised in January 2006 for $230,000, but he offered no corroborating evidence.
 

 [4]
 

 . The chancellor additionally ordered that Richard pay approximately $7,000 from the remaining proceeds to satisfy other obligations under the property settlement agreement.
 

 [5]
 

 . Richard also argues in his brief on appeal that Juanita's appraiser was a business associate of a nearby neighbor, and that the appraisal is unreliable for that reason. This, however, does not appear to be supported by any testimony in the record.