ISHEE, J.,
for the Court:
¶ 1. Trayce Deanne Martin Pogue and Gerald Phillip Pogue Jr. (Phillip), were divorced by the Pearl River County Chancery Court in 2010. The parties agreed on a property-settlement and custody agreement (the agreement), which was incorporated into the chancery court’s judgment. Trayce later filed a motion for contempt against Phillip, claiming he failed to uphold his duties under the agreement. Phillip counterclaimed seeking sole physical custody of their three minor children. The chancery court denied Trayce’s motion for contempt and granted Phillip’s motion for sole physical custody. Aggrieved, Trayce appeals. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. Trayce and Phillip were granted a divorce based on irreconcilable differences on April 14, 2010. The chancery court incorporated the agreement into the judg *969 ment of divorce. The agreement included terms regarding the division of the marital home, as well as custody of the Pogues’ children. Phillip was awarded the marital home in Poplarville, Mississippi, but agreed to refinance the home and pay Trayce $50,000 within six months of the date the divorce judgment was entered. If Phillip did not refinance the home and pay Trayce within six months, he was ordered to quitclaim his interest in the marital home to Trayce.
¶ 3. With regard to the children, Trayce and Phillip shared joint legal and physical custody pursuant to the terms of the agreement. The agreement ordered the children to spend alternating weeks, including weekends, with each parent. Neither parent paid child support as long as Phillip paid the children’s private-school tuition.
¶ 4. Phillip and the children lived in the home for some time after the divorce, but he eventually moved out. Trayce admitted that she went to the abandoned house and removed several ceiling fans. However, later, Phillip discovered that the home had been stripped of the air-conditioning unit, wiring, and copper pipes. Trayce denies any involvement in these destructive activities.
¶ 5. Phillip attempted to refinance the home both before and after the vandalism, but was unable to do so. Accordingly, he offered to quitclaim the property to Trayce. The record indicates that Trayce refused the conveyance, stating she did not want the home. She testified that she agreed to negate the terms of the agreement and allow Phillip additional time to pay her the $50,000 instead of having him convey the property to her. She also testified that Phillip did not offer to quitclaim the home to her until after it had been vandalized. She stated that she wants the money, not the property; but, if Phillip had offered to quitclaim the home to her before the vandalism, she would have considered it.
¶ 6. In September 2011, Trayce filed a complaint in the chancery court citing Phillip’s alleged contempt for failure to pay her the $50,000. Her complaint initially also sought a modification of the custody agreement to grant her sole physical custody of the children. She soon dismissed her claim for sole physical custody.
¶ 7. Phillip denied the allegation of contempt. He later counterclaimed in February 2012 with his own motion to modify the custody agreement, seeking sole physical custody of the children. He asserted that since the divorce, Trayce had only exercised alternating weekend visitation, as opposed to the week-long visitation ordered in the judgment and consented to in the agreement. He also claimed that he provided all financial support for the children and was the primary caregiver.
¶ 8. At trial, Trayce acknowledged that she and Phillip had reached an understanding that delayed his payment of the $50,000 for approximately one year and negated the original agreement. She admitted that Phillip had offered to quitclaim the home to her, but that she had refused since the home was in such disarray.
¶ 9. The chancery court determined that the parties made an unauthorized change to the agreement and broke with the chancery court’s judgment by extending the payment date for the $50,000 by one year. The chancery court admonished the parties for their unauthorized outside agreement and for failing to take any steps to preserve, protect, or maintain the marital home once it was vacant. The chancery court acknowledged that, at present, the home is in no condition to refinance. Accordingly, the only option was for Phillip to quitclaim the house to Trayce immediately *970 and pay all outstanding taxes and liens on the property.
¶ 10. With regard to the child-custody matters, the evidence presented at trial showed that the Pogues did not share joint physical custody. Instead, Trayce and Phillip had agreed that- the children would live with Phillip during the week so that they could remain in the school they were attending prior to the divorce. As such, the children lived with Phillip full time and visited Trayce every other weekend.
¶ 11. Prior to the trial, the chancellor appointed a guardian ad litem (GAL) to conduct a full investigation and provide a report. After reviewing the evidence regarding custody, the chancellor conducted an on-the-record Albright[1] analysis and relied heavily on the GAL’s report. The chancellor determined that the parties’ behavior since the divorce in allowing the children to live with Phillip during the week and with Trayce on alternating weekends was a material change in circumstances. The chancery court stated that continuation of the prior joint-custody order would prove impractical. So as not to disrupt the children’s lives, the chancery court granted Phillip primary physical custody with the parties to maintain joint legal custody. Trayce was granted liberal visitation rights and physical custody every other weekend, as well as a summer vacation schedule. Holidays and special events were evenly divided.
DISCUSSION
¶ 12. In domestic-relations cases, appellate courts are limited in their review of the issues. Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). “We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong [or] clearly erroneous, or applied an erroneous legal standard.” Taylor v. Bell, 87 So.3d 1134, 1137 (¶ 6) (Miss.Ct.App.2012).
I. Marital Home
¶ 13. We first address the contempt issue regarding the marital home. The chancellor properly cited the case of Dalton v. Dalton, 874 So.2d 967, 972 (¶ 13) (Miss.2004), to support the notion that chancery courts have deference in enforcing property-settlement agreements and resolving disputes between parties regarding those agreements during a contempt proceeding. Additionally, we recognize that “[t]he chancellor sits as the fact finder and is the sole judge of the credibility of a witness when resolving factual disputes.” Stokes v. Campbell, 794 So.2d 1045, 1048 (¶ 11) (Miss.Ct.App.2001).
¶ 14. Here, the chancellor determined that Trayce initiated the change in the agreement by offering Phillip an extension of time to refinance the home and pay her $50,000. Phillip was still unable to refinance the home after the extension. At the time of the hearing, the chancellor found that the home was in no condition to qualify for refinancing. Therefore, the chancellor stated that the only viable option was to invoke the alternate term of the agreement — quitclaiming the home to Trayce.
¶ 15. We agree with the chancery court. Trayce cannot claim Phillip violated the terms of the agreement when she initiated the violation. She afforded Phillip more time to refinance the home and refused to accept Phillip’s offer to quitclaim the property to her. This gave Phillip no recourse other than to continue attempting to refinance the home.
¶ 16. The law provides that the chancellor was in the best position to determine how this dispute should be resolved. See *971 Dalton, 874 So.2d at 971 (¶ 9). The chancellor’s ruling merely upheld the terms of the agreement that were enforceable with regard to the marital home. In doing so, the chancellor attempted to remain in keeping with the parties’ original intent when entering into the agreement. We cannot find manifest or clear error or an erroneous application of the law in the chancellor’s judgment. This issue is without merit.
II. Child Custody
¶ 17. We next address the child-custody claim. The record indicates that the children attend a private school in Wiggins, Mississippi. Phillip has ensured that they are transported to and from the school every weekday since the divorce. Trayce is unable to get the children to and from school due to her work schedule and her current living situation.
¶ 18. Trayce is employed as a registered nurse at both the Covington County Hospital and the Pearl River County Hospital Emergency Room. Her work hours are usually from 7 a.m. until 7 p.m. However, Trayce testified that she sets her own work hours based on available shift work.
¶ 19. After the divorce, Trayce moved from Poplarville to Sumrall, Mississippi, and later to Columbia, Mississippi, where she presently lives with her fiancé. The distance alone between the children’s school in Wiggins and Trayce’s home in Columbia prevents her from being able to provide continuity in school for the children. Additionally, Trayce’s current home does not provide enough space for all three of the children to live. Her fiancé has two children who visit from time to time, and there are not enough bedrooms for Trayce’s three children, much less the couple’s combined five children.
¶ 20. The GAL’s report was admitted into evidence at the trial. In the report, she found that the children are primarily with Phillip during the school year and that Trayce only has them every other weekend. She also stated that she found no adverse consequences from the children living at Phillip’s house and having Phillip’s house serve as their custodial home. The GAL conducted an Albright analysis, and reported that four of the twelve Al-bright factors weighed in favor of Phillip, with the remaining factors being neutral to both parties. The chancellor adopted the GAL’s Albright analysis, and reiterated the findings on the record when determining that enforcement of the prior joint-physical-custody agreement would be impractical.
¶ 21. We agree. In McRee v. McRee, 728 So.2d 1217, 1218 (¶¶ 2-4) (Miss.Ct.App.1998), we addressed a similar situation where parents were given joint custody of a child following a divorce, but one party later sought to modify the agreement pursuant to the parties’ actions that were contrary to the agreement. Id. at 1218 (¶¶ 2-4). There, we stated:
Taking the parties as he found them, ... the chancellor had to determine what was in the best interest of the child. Quickly determining that leaving custody unchanged was impractical, he was not required to force that decision into some general framework that just was not applicable. To look at custody anew and apply the correct Albright factors was in the best tradition of what chancellors are supposed to do, and that is to seek equity.
Id. at 1220 (¶ 11) (citing Bredemeier v. Jackson, 689 So.2d 770, 776-77 (Miss.1997)).
¶ 22. Likewise, the chancellor merely sought equity here. The record reflects that the parties never abided by the original joint-physical-custody agreement. Due to Trayee’s work and living situations, the *972 children have remained primarily with Phillip during the week so that they can continue to attend them current school in Wiggins. The evidence shows that Trayce is unable to provide this continuity to the children. The record also indicates that if the joint-physical-custody agreement were enforced, not only would the children’s school change, their community would also change due to Trayce’s move to Columbia.
¶ 23. Enforcing the original joint-physical-custody agreement would alter the lifestyle that the children have grown accustomed to since before the divorce was final. The original agreement has never been acted upon by the parties, and should not be acted upon now. This issue is without merit.
¶ 24. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).