# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01434-COA

JIMMY GIBBS                                                          APPELLANT

v.

RITA F. MOODY                                                        APPELLEE

DATE OF JUDGMENT:            09/03/2014
TRIAL JUDGE:                 HON. H. DAVID CLARK II
COURT FROM WHICH APPEALED:   SCOTT COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      P. SHAWN HARRIS
ATTORNEY FOR APPELLEE:       JUSTIN TYLER MCCAUGHN
NATURE OF THE CASE:          CIVIL - CONTRACT
TRIAL COURT DISPOSITION:     GRANTED JUDGMENT IN APPELLEE'S
                             FAVOR
DISPOSITION:                 AFFIRMED - 12/01/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Jimmy Gibbs appeals the Scott County Chancery Court's judgment settling a contract dispute in Rita Moody's favor. On appeal, Gibbs argues that the chancellor erroneously applied Mississippi caselaw to interpret a written contract between the parties. Finding no error, we affirm.

## FACTS

¶2.     Gibbs owned a home and a lot in Forest, Mississippi. On June 7, 2010, he entered into a rent-to-own contract with Moody. Under the contract's terms, Gibbs agreed to rent the home to Moody for four years. At the end of the four-year period, Moody planned to

purchase the home by paying Gibbs the remaining balance she owed on the home's purchase price. Gibbs wrote the contract himself. Both he and Moody signed and dated the contract, and a third party witnessed the contract.

¶3. The contract set forth the following provisions: (1) Gibbs agreed to rent the home and property to Moody for $500 a month; (2) Moody agreed to obtain at least $33,000 in insurance; (3) Moody was required to provide proof of insurance at least twice a year; (4) if Moody failed to make her monthly payment, the agreement would become null and void; (5) Moody would assume the responsibility of maintaining the home once she took charge of the property; (6) Moody could not structurally alter the home or the property until she paid the full purchase price of the home; (7) the agreement could not be transferred or passed on to another party; (8) the rent-to-own contract would last for four years, with the remaining balance to be fully paid after the fourth year; and (9) Moody agreed to pay the closing costs. The contract also stated that Gibbs agreed to "pay the [$8,000] loan against the house until the loan is paid off."

¶4. On June 4, 2011, Gibbs signed a second document titled "Rental Agreement" and mailed a copy of the agreement to Moody. The rental agreement provided that rent was due on the first day of every month and that a $10 late fee would be assessed after the fourth day of the month. The agreement reiterated that a loan existed against the home for the leveling of the foundation and that Gibbs assumed responsibility for paying the loan each month. The agreement further stated that a late fee would be imposed on Gibbs if he failed to make the foundation loan's monthly payment.

2

¶5.     As the record reflects, Gibbs obtained the $8,000 loan from BancorpSouth to repair the home's foundation. When the four-year term on the parties' contract ended, $4,000 remained on the balance of the foundation loan. A disagreement arose between the parties as to the responsibility of paying the remainder of the BancorpSouth loan. Although the contract stated that Gibbs agreed to "pay the [$8,000] loan against the house until the loan is paid off[,]" Gibbs argued he only intended to make the loan payments until Moody satisfied the terms of the contract. Once Moody made her payments under the contract's terms, Gibbs stated that Moody was to assume responsibility for the BancorpSouth loan payments. Moody contended, however, that Gibbs retained responsibility for full payment of the BancorpSouth loan.

¶6.     As a result of their disagreement over the repayment of the foundation loan, the parties also disagreed on the total purchase price of the home, which the contract failed to specify. At the chancery court hearing, the parties agreed that the base purchase price of the home was the $33,000 mentioned in the contract's second provision. While Moody argued the $33,000 constituted the full amount of the purchase price, Gibbs contended that the total purchase price included the $33,000 plus the remaining balance of the foundation loan.

¶7.     After failing to resolve her dispute with Gibbs, Moody filed a complaint in chancery court. By the end of the contract's four-year period, Moody had paid Gibbs $24,000 toward the home's purchase price. Moody therefore requested that the chancellor order Gibbs to deed her the property in exchange for $9,000, which Moody argued was the remaining balance of the home's purchase price. Moody also sought to have Gibbs retain responsibility

3

for the $4,000 remaining on the BancorpSouth foundation loan.

¶8.    After considering the parties' testimony and evidence, the chancellor found the contract was ambiguous as to the purchase price of the home. After reviewing the four corners of the contract, the chancellor moved to the canons of contract interpretation for further analysis. Finding that caselaw clearly established a contract should be interpreted against the drafter, the chancellor found that the parties' testimony supported Moody's claim that the home's agreed-upon purchase price totaled $33,000. The chancellor further found no ambiguity in the contract and rental agreement as to the repayment of the foundation loan. The chancellor found the contract directed Gibbs to retain responsibility for the full payment of the loan. The chancellor thus ordered Gibbs to pay the loan balance from the home's sale proceeds.

¶9.    Aggrieved by the chancellor's judgment, Gibbs appeals to this Court.

## STANDARD OF REVIEW

¶10.    This Court will not disturb a chancellor's findings of fact unless they are manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Ainsworth v. Ainsworth*, 139 So. 3d 761, 762 (¶3) (Miss. Ct. App. 2014). However, we review a chancellor's conclusions of law de novo. *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009). Our precedent establishes that questions involving the construction and interpretation of contracts are questions of law that we review de novo. *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 751 (¶4) (Miss. 2003).

## DISCUSSION

4

¶11. On appeal, Gibbs argues that the chancellor erroneously applied Mississippi caselaw on contract construction to interpret the parties' written contract. Gibbs asserts that he poorly drafted the parties' contract and that, as a result, the contract contained an ambiguity as to the repayment of the foundation loan. As previously discussed, the contract stated that Gibbs agreed to "pay the [$8,000] loan against the house until the loan is paid off." Gibbs alleges the contract's language failed to specify whether he would pay the foundation loan until that loan was satisfied or whether he would pay the foundation loan until Moody satisfied her loan payments to him for the purchase of the home.

¶12. Alleging that the contract's meaning was ambiguous, Gibbs contends the chancellor erred by finding the four corners of the contract clearly established that Gibbs bore full responsibility for repaying the foundation loan. Gibbs further argues that the chancellor erred by finding the total purchase price of the home amounted to $33,000. Due to these alleged errors, Gibbs asks this Court to reverse the chancellor's judgment and to remand the matter for a hearing to allow extrinsic evidence as to the parties' intent.

¶13. In *Royer*, the supreme court provided the following guidance on issues of contract construction and interpretation:

> The question of law/question of fact dichotomy requires a two-step inquiry in contract law. First of all, it is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written. Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder. Appellate courts review questions of law de novo.
>
> In the event of an ambiguity, the subsequent interpretation presents a question of fact for the jury which we review under a substantial evidence/manifest error standard. If the terms of a contract are subject to more

5

than one reasonable interpretation, it is a question properly submitted to the jury.

The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties. In contract construction cases[,] a court's focus is upon the objective fact—the language of the contract. A reviewing court is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other. A reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue.

This Court has set out a three-tiered approach to contract interpretation. Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. We must look to the "four corners" of the contract whenever possible to determine how to interpret it. When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.

Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiation, agreements[,] and conversations might be considered in determining the parties' intentions in the construction of the contract. Of course, the so-called three-tiered process is not recognized as a rigid

6

"step-by-step" process. Indeed, overlapping of steps is not inconceivable.

*Royer*, 857 So. 2d at 751-53 (¶¶7-11) (internal citations and quotation marks omitted).

¶14. Upon review, we find no error in the chancellor's application of Mississippi caselaw to construct and interpret the written contract between Gibbs and Moody. The chancellor first considered the question of whether Gibbs or Moody bore the responsibility for paying the remaining balance of the foundation loan. In accordance with the supreme court's guidance in *Royer*, the chancellor initially examined the contract itself and the language contained within the four corners of the document. *See id.* at 752 (¶10). As the *Royer* court stated, the appellate court's "concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue." *Id.* (citations omitted).

¶15. Examining the four corners of the parties' contract and related rental agreement, which were both prepared and signed by Gibbs, the chancellor noted the contract's statement that Gibbs agreed to "pay the [$8,000] loan against the house until the loan is paid off." The chancellor next acknowledged Gibbs's statement in the rental agreement that he bore the responsibility for paying the foundation loan each month and that he would incur a late fee if he failed to make the payments. Based on his reading of the contract and the rental agreement, and the language Gibbs himself employed when drafting the documents, the chancellor found no ambiguity within the four corners of the contract as to the repayment of

7

the foundation loan. Instead, the chancellor found the terms of the contract and the rental agreement clearly established that Gibbs bore full responsibility for repaying the loan to BancorpSouth.

¶16. The chancellor next considered the parties' dispute over the purchase price of the home. Again looking to the four corners of the contract, the chancellor found the contract failed to clearly express the parties' intent. Due to the contract's ambiguity and failure to specify a purchase price, the chancellor questioned the parties about the home's purchase price. Moody testified that the purchase price was $33,000, as evidenced by the contract's requirement that she secure at least $33,000 in insurance. The chancellor determined that Moody had already paid Gibbs $24,000 over the four-year term of the contract. Therefore, if the chancellor found the home's purchase price to be $33,000, Moody would still owe Gibbs a balance of $9,000. When the chancellor questioned Gibbs about the home's purchase price, Gibbs testified that the parties agreed on $33,000 plus the balance left on the foundation loan at the expiration of the contract's four-year term. Because $4,000 remained unpaid on the foundation loan, the total purchase price under Gibbs's theory amounted to $37,000.

¶17. After considering the issue, the chancellor interpreted the contract's language in favor of Moody, the non-drafting party, and found the home's purchase price totaled $33,000. The chancellor provided that, as the contract's drafter, Gibbs possessed the ability and the opportunity to clearly state his intentions as to the home's purchase price. Looking to canons of contract construction, the chancellor held Gibbs's failure to do so against him and

8

interpreted the contract in Moody's favor. *See Royer*, 857 So. 2d at 753 (¶11) ("Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." (citation omitted)).

¶18.    After reviewing the record and applicable caselaw, we find no merit to Gibbs's claim that the chancellor misconstrued Mississippi caselaw in interpreting the parties' written contract. Instead, the chancellor's judgment reflects that he followed applicable precedent in construing and interpreting the parties' contract in Moody's favor. *See id.* at 751-53 (¶¶7-11). As a result, we find no error in the chancellor's conclusions that the home's purchase price totaled $33,000 and that Gibbs retained full responsibility for repaying the foundation loan.

¶19.    **THE JUDGMENT OF THE SCOTT COUNTY CHANCERY COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**