# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00019-COA

STACEY DUHE COVIN                                                                    APPELLANT

v.

MATTHEW ALAN COVIN                                                                    APPELLEE

DATE OF JUDGMENT:            12/07/2021
TRIAL JUDGE:                HON. MICHAEL CHADWICK SMITH
COURT FROM WHICH APPEALED:  FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:     CHASE FORD MORGAN
ATTORNEY FOR APPELLEE:      RENEE M. PORTER
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
DISPOSITION:                AFFIRMED - 08/08/2023
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     On December 7, 2021, the Chancery Court of Forrest County entered an opinion and final judgment on Matthew Covin's June 9, 2020 "Complaint for Contempt," Matthew's July 2, 2020 "Amended Motion for Contempt," and responsive motions filed by Stacey Covin, finding both parties in contempt and denying both their requests for attorney's fees. Aggrieved by the ruling of the chancery court, Stacey appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.     Matthew and Stacey were married on April 12, 2012, with their final separation occurring on September 9, 2016. The parties have one son, FAC,[1] born in September 2013.

---

[1] Initials are used to protect the identity of the minor child.

On September 19, 2016, Stacey filed a complaint for divorce and motion for temporary relief. Matthew filed his answer and a counterclaim on October 5, 2016. After a hearing on November 17, 2016, the chancery court issued a temporary order governing matters such as custody, spousal support, property division, and financial responsibilities. The order also provided for the appointment of a guardian ad litem for the minor child, with the appointment to be made by a separate order. On April 8, 2020, the chancery court entered an order allowing the withdrawal of fault grounds, and a final judgment of divorce was entered on the same day. The final judgment of divorce incorporated a settlement agreement for child custody, child support, and property.[2]

¶3.    On April 14, 2020, Matthew filed a complaint for contempt alleging Stacey failed to allow visitation. After a video hearing on May 1, 2020, the chancellor entered an order finding Stacey in contempt and ordered her to pay Matthew $750 for attorney's fees and $158 for court costs. On May 11, 2020, Stacey filed a motion for findings of fact and conclusions of law, for an amendment of the order of contempt, for a new trial, or for altering the order.

¶4.    On June 9, 2020, Matthew filed a motion for contempt and amended that motion on July 2, 2020. The amended motion asked the chancellor to (1) order that the marital home and property be listed for sale immediately; (2) require Stacey to either immediately or upon sale of the marital home and property remit to Matthew his $49,082 interest in the marital property; (3) issue an order for Matthew to be allowed to enter the marital home and property to retrieve his personal belongings; and (4) require Stacey to account for Matthew's missing

---

[2] Stacey and Matthew filed many motions that are not applicable to this appeal and are not addressed in this opinion.

personal belongings, all in accordance with the property settlement agreement.[3] On June 18, 2020, the chancellor denied Stacey's May 11, 2020 motions and ordered that the previous order of contempt remain in effect. Stacey filed a response to Matthew's amended motion on August 12, 2020, with her own counterclaim for contempt, alleging that Matthew had failed to remit $10,000 awarded to her in the final judgment of divorce.[4] After a one-day trial on October 26, 2021, with testimony from Stacey and Matthew only, the chancellor issued his ruling on December 7, 2021, finding both parties in contempt and concluding:

> IT IS THEREFORE, ORDERED AND ADJUDGED Matt's contempt claim in GRANTED.
>
> IT IS, FURTHER, ORDERED AND ADJUDGED that as part of the Court's clarification of the *Property Settlement Agreement*, Stacey will tender the Smith and Wesson pistol, the weed eater, the hedge clippers, the pole saw, and the chain saw, in working order, to Matt within thirty (30) days of the entry of this *Opinion and Final Judgment.* Should Stacey fail to tender these items to Matt within thirty (30) days, she shall turn herself in to the custody of the Sheriff of Forrest County, Mississippi, to be incarcerated until such time that she fulfills the terms of this *Opinion and Final Judgment.*
>
> IT IS, FURTHER, ORDERED AND ADJUDGED that Stacey's contempt claim is GRANTED. Matt will tender $10,380.00 to Stacey via cashier's check within thirty (30) days of the entry of this Opinion and final Judgment. Should he not purge himself of this contempt within thirty (30) days, he shall turn himself in to the custody of the Sheriff of Forrest County, Mississippi, to be incarcerated until such time that he purges himself of contempt.
>
> IT IS, FURTHER, ORDERED AND ADJUDGED, that both parties come to the Court with unclean hands. Both requests for an award of

[3] Certain provisions of the property settlement agreement that are the subject of this appeal will be set forth in greater detail in our analysis.

[4] The $10,000 represented an award to Stacey for Matthew's contempt and for Stacey's attorney's fees.

attorney's fees are DENIED.

IT IS, FURTHER, ORDERED AND ADJUDGED that any and all other relief requested by the parties by way of pleadings, motions, or submissions filed or pending on the record at trial, not addressed and afforded herein, is deemed DENIED and prayers therefore are DISMISSED WITH PREJUDICE with each party bearing their own costs of litigation.

It is from this ruling Stacey appeals.

## STANDARD OF REVIEW

¶5. In *Pogue v. Pogue*, 126 So. 3d 967, 970 (¶12) (Miss. Ct. App. 2013), this Court

stated:

In domestic-relations cases, appellate courts are limited in their review of the issues. *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994). "We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong [or] clearly erroneous, or applied an erroneous legal standard." *Taylor v. Bell*, 87 So. 3d 1134, 1137 (¶6) (Miss. Ct. App.2012).

## ANALYSIS

I.      **The chancery court did not err in making a sua sponte clarification and modification of the parties' final judgment of divorce and by ordering Stacey's incarceration should she fail to comply.**

¶6. In his order, the chancellor found:

Stacey unilaterally decided what personal [items] belonged to Matt when she placed his belongings outside. Although she was contemptuous by not allowing Matt to enter the home to retrieve his personal items, she was not contemptuous in delineating what items would be left for Matt as the list in the *Properly Settlement Agreement* was vague. The Court finds the vagueness of the Property Settlement Agreement as to specific items is a proper defense.

Nonetheless, the fact remains that Stacey unilaterally decided which items Matt was entitled to receive. This is inequitable. The Court therefore, in equity, must clarify the *Property Settlement Agreement* as to who owns those items on the list Matt claims he did not receive. As to the dispute over the Smith and Wesson pistol, firearms are mentioned twice in the *Property*

4

*Settlement Agreement.* The parties agreed that Stacey would retain a firearm currently in the possession of the Petal Police Department. The other mention of firearms is on page twelve, where the parties agreed that Matt would receive the firearms kept in the marital residence. Stacey argues the Smith and Wesson should not be included in that list of firearms because the pistol is located in her automobile and not "in the marital residence." The Court disagrees and clarifies the *Property Settlement Agreement* to express a specific award of one particular firearm to Stacey, the firearm currently in the possession of the Petal Police Department, and the remainder of the firearms being awarded to Matt, including the Smith and Wesson.

As to the bush hog, there is no dispute that it did exist. Stacey stated that the bush hog is no longer on the property and she has no knowledge of what happened to it. She did not report it as stolen. Matt claims that the bush hog was his and that he was the only one that used it. Stacey did not dispute this. According to Matt, the bush hog was old and worth only a few hundred dollars. The Court finds the bush hog was in Stacey's possession when it was awarded to Matt as part of his equitable distribution and was also in Stacey's possession when it disappeared. At the closing, Matt received $50,000.00 instead of $49,082.00. These additional funds he received shall be compensation for not receiving the bush hog. As to the compound bow and the 80 pounds of lead, the whereabouts of these items were disputed and neither party submitted sufficient evidence for the Court to render a finding on either item. As such, the issue on these items is moot. Regarding the four-wheeler, Matt conceded that it was a gift to "the girls." Since it was a gift, the Court finds that Stacey shall retain ownership and possession of the four-wheeler. As to the ice chest, there was testimony both parties used this item. It will therefore remain with Stacey. As to the chainsaw, pole saw, weed eater, and hedge clippers, the usage evidence on these items favored Matt. These items are therefore awarded to Matt.

Stacey argues that the chancellor erred by requiring her to deliver items of personalty to Matthew that were not specifically listed in the agreement. Stacey contends that since the items Matthew claims were not specifically listed in the property settlement agreement, which Matthew's attorney drafted, the language from the property settlement itself should have prevailed. The property settlement agreement provided that other than the items of personalty delineated in the agreement, the personalty "in the possession of each respective

5

party shall be that party's exclusive property, and the other party shall relinquish any and all claims to said property." Stacey cites *Williams v. Williams*, 37 So. 3d 1171 (Miss. 2010), where the supreme court found that property settlement agreements are contractual in nature, and since the items Matthew claimed should be returned to him were not listed in the settlement agreement, "the plain language of their agreement should control."

¶7. The chancellor found that certain provisions of the property settlement agreement were vague. The agreement provided, in part, as follows:

> C.    **Personal Property**
>
>    1.    The parties hereby agree that Matthew shall have and retain sole possession and ownership of the following, and that Matthew will be permitted to retrieve the same from the marital residence:
>
>       a.    Those/that certain firearm(s) that were kept in the marital residence prior to the parties separation.
>       b.    That certain gun safe which shall be unopened.
>       c.    Those certain tractor implements.
>       d.    Those certain tools.
>       e.    Those certain personal possessions known by both parties to belong to Matthew.

The chancellor noted that the agreement does not identify the specific number of guns that Matthew could retrieve. Specific "tractor implements," "certain tools," and "personal possessions" that Matthew was entitled to retrieve were not identified. The property settlement agreement provided that Matthew would be able to retrieve "the hereinabove delineated items of personalty assigned to his exclusive ownership" within thirty days of the entry of the final judgment. As addressed below, Stacey prevented Matthew from retrieving his property. As a result, the question of what property Matthew was entitled to retrieve was

6

placed before the court.

¶8.     In *Trustmark National Bank v. Enlightened Properties LLC*, 330 So. 3d 772, 777 (¶7) (Miss. Ct. App. 2021), we set forth the standard of review for the interpretation of contracts:

> In cases involving the construction of contracts, two separate standards of review are required. A de novo standard of review should be applied in first determining whether a contract is ambiguous. *Gibbs v. Moody*, 180 So. 3d 830, 833 (¶10) (Miss. Ct. App. 2015) (citing *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 751 (¶4) (Miss. 2003)). Pursuant to *Royer*, if there is no ambiguity, we must enforce the contract as it is written. *Royer*, 857 So. 2d at 752 (¶7). However, in the event an ambiguity is found, the subsequent interpretation presents a question of fact committed to the fact finder. *Id*. In that instance, this Court will not disturb a chancellor's findings of fact unless they are manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Gibbs*, 180 So. 3d at 832-33 (¶10).

¶9.     In *Bryant v. Bryant*, 348 So. 3d 309, 313 (¶9) (Miss. 2022), the supreme court explained:

> We have held that "[w]hen this Court reviews a chancellor's decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 [(¶6)] (Miss. 2007) (citing *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007)). "However, a property settlement agreement is a contractual obligation." *Harris v. Harris*, 988 So. 2d 376, 378 [(¶8)] (Miss. 2008) (citing *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986)). Questions of law, such as contract interpretations, are reviewed de novo. *Id*. (citing *Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 215 (Miss. 1999)).

¶10.    Pursuant to *Trustmark*, 330 So. 3d at 778 (¶9), to determine whether the property settlement agreement is ambiguous, "we begin the process by reviewing the 'four corners' of the [settlement agreement]. . . . We must read the contract as a whole so as to give effect to, or harmonize, the various provisions of the agreement, if possible." *Id*.

¶11.    We agree with the chancellor that the property settlement agreement was vague or

7

ambiguous as it relates to the items of personalty Matthew was entitled to retrieve. And we do not find that the chancellor was manifestly wrong or clearly erroneous in his interpretation of the vague or ambiguous portions of the agreement.

¶12.    The chancellor did not modify, but rather clarified, the property settlement agreement, and he also noted that Matthew pled for general relief.[5] In *Archie v. Archie*, 337 So. 3d 698, 704 (¶18) (Miss. Ct. App. 2022), this Court held that

> a party's prayer for general relief is sufficient to allow a chancellor to "impose any relief to which [the party] was 'entitled by the proof' and which was 'within the jurisdiction of the court to grant.'" *Shumake v. Shumake*, 233 So. 3d 234, 238 (¶11) (Miss. 2017).

Further, this Court has explained in *Johnson v. Smith*, 328 So. 3d 145, 152-53 (¶35) (Miss. Ct. App. 2021), *cert. denied*, 328 So. 3d 1253 (Miss. 2021),

> As to whether a chancellor can grant relief not specifically requested by a party, Mississippi Rule of Civil Procedure 54(d) states, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings." . . . The supreme court has held that a party's prayer for general relief is sufficient to allow a chancellor to "impose any relief to which [the party] was 'entitled by the proof' and which was 'within the jurisdiction of the court to grant.'" *Shumake v. Shumake*, 233 So. 3d 234, 238 (¶11) (Miss. 2017).

We do not find the chancellor erred in this regard.

¶13.    When the chancellor ordered Stacey to surrender the items of personal property to Matthew, he also held that if Stacey failed to tender the items to Matthew within thirty days of the entry of the "Opinion and Final Judgment," she would have to turn herself in to the

---

[5] Both Matthew's original motion and his amended motion conclude, "[A]nd if Matthew A. Covin has prayed for wrong, improper, or insufficient relief, then he prays for such other and further relief as to which he may be entitled in the premises."

Forrest County sheriff and be incarcerated until she complied with the terms of the chancellor's order.[6] Stacey argues this mandate was error. Stacey quotes Mississippi Code Annotated section 9-1-17 (Rev. 2019), in part:

> The Supreme, circuit, chancery and county courts and the Court of Appeals shall have power to fine and imprison any person **guilty of contempt** of the court while sitting, but the fine shall not exceed One Hundred Dollars ($100.00) for each offense, nor shall the imprisonment continue longer than thirty (30) days. If any witness refuse to be sworn or to give evidence, or if any officer or person refuse to obey or perform any rules, order, or judgment of the court, such court shall have power to fine and imprison such officer or person until he shall give evidence, or until the rule, order, or judgment shall be complied with.

(Emphasis added).

¶14.   Stacey contends that the chancellor erred by ordering that she be incarcerated if the delineated items were not returned to Matthew because the chancellor did not find her in contempt as to the failure to return those items. The opinion and final judgment states, "[T]he Court finds Stacey violated the *Property Settlement Agreement* by offering no viable defense in refusing to allow Matt and the third-party individual to retrieve his personal items from the home." Thus, Stacey was found to be in contempt for preventing Matthew from retrieving his items of personal property pursuant to the original property settlement agreement.

¶15.   Both Stacey and Matthew were found to be in contempt of court for their failure to abide by the terms of the original property settlement agreement. Rather than ordering that they be immediately incarcerated until they purged themselves of contempt, the chancellor gave them both an opportunity to purge themselves of contempt without going straight to jail.

_____

[6] Matthew was also found to be in contempt and was also ordered to purge himself of contempt within thirty days or turn himself in to the Forrest County sheriff.

9

Both were given thirty days after the entry of the judgment, which was filed with the clerk on December 7, 2021.

¶16. The time for performance has long since passed. There is no evidence in the record to show that Stacey sought a stay of the enforcement of the final judgment pursuant to Mississippi Rule of Appellate Procedure 8(b). In *Gamma Healthcare Inc. v. Estate of Grantham*, 356 So. 3d 135, 140 (¶8) (Miss. Ct. App. 2020), *aff'd*, 334 So. 3d 85 (Miss. 2022), this Court held:

> "Cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot." *Id*. (quoting *Allred v. Webb*, 641 So. 2d 1218, 1220 (Miss. 1994)). We will not exercise appellate "review . . . for the purpose of settling abstract or academic questions, and . . . we have no power to issue advisory opinions." *Id*. (quoting *Allred*, 641 So. 2d at 1220).

Accordingly, this portion of Stacey's argument is now moot. This assignment of error is also without merit.

**II.      The chancery court did not err in finding Stacey in contempt.**

¶17. In *Savell v. Manning*, 325 So. 3d 1208, 1220 (¶43) (Miss. Ct. App. 2021), we recognized the well-settled standard of review for contempt cases:

> "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Gilliland v. Gilliland*, 984 So. 2d 364, 370 (¶19) (Miss. Ct. App. 2008). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id*. at 369-70 (¶19) (quotation marks omitted). With respect to a finding of civil contempt, "the factual findings of the chancellor are affirmed unless manifest error is present and apparent." *Purvis* [*v. Purvis*], 657 So. 2d [794,] 797 [(Miss. 1994)].

> **A.      The finding of contempt for failure to refinance the marital home within the court-ordered sixty-day period and contempt for failure to remit Matthew's**

10

**equitable interest in the marital home within the sixty-day period was not erroneous.**

¶18.     It is undisputed that Stacey failed to comply with the property settlement agreement regarding refinancing the home. "The failure of a party to comply with a divorce decree is prima facie evidence of contempt." *Weeks v. Weeks*, 29 So. 3d 80, 86 (¶23) (Miss. Ct. App. 2009). As a result, the chancellor found that a prima facie case had been made for contempt in failing to complete the refinancing within sixty days as required by the settlement agreement. Once the chancellor found that a prima facie case had been made, the burden shifted to Stacey to rebut that case with proof that was "clear and convincing and ris[ing] above a state of doubtfulness." *Fancher v. Pell*, 831 So. 2d 1137, 1143 (¶30) (Miss. 2002). At trial, however, Stacey produced nothing other than her own testimony that it was Matthew's fault for failing to produce the information she needed to accomplish the refinancing sooner. Matthew testified that he had produced the information many times, and the chancellor found Matthew's testimony was more credible on this issue.[7] Further, the mortgage documentation (included as Exhibit 1) reveals that it was Paramount Residential Mortgage Group Inc. that provided the funds for Stacey's refinancing, not Wells Fargo (the mortgage holder during the marriage). There is no evidence in the record that Stacey lacked what she needed to accomplish the refinancing. Giving the deference due to the chancellor in matters of contempt, we do not find manifest error.

---

[7] "The chancellor, who sits in the unique position to observe the parties and their demeanor, the evidence, and the testimony, is infinitely more competent to decide contempt matters than we are. Because contempt is an issue of fact to be decided on a case-by-case basis, these matters are committed to the substantial discretion of the trial court." *English v. Davenport*, 253 So. 3d 357, 361 (¶7) (Miss. Ct. App. 2018).

¶19. Stacey contends that because she was unable to accomplish the refinance, she was also unable to remit Matthew's equitable interest. Again, she argues that Matthew failed to make a prima facie case on this issue and that holding her in contempt was erroneous. The chancellor found that "[i]t is undisputed that Stacey did not tender the funds representing Matt's equitable interest during the 60-day period as required." Because of this failure, the chancellor found that Matthew "established a prima facie case for contempt," and as a result, the burden shifted to Stacey to show "by clear and convincing evidence that she was not willfully in contempt" and that since she offered no evidence regarding her defense, she failed to carry her burden. Stacey's argument here is without merit.

### B. The finding of contempt for failure to allow Matthew to retrieve his personal property from the marital home was not erroneous.

¶20. Stacey reasons that the final judgment of divorce did not specifically provide for Matthew to enter the marital home to retrieve personal belongings. The chancellor found Stacey's interpretation to be unreasonable. The chancellor further found her claim that she left the items of personalty outside because she was afraid of him was "frivolous" because the property settlement agreement provided that Matthew be accompanied by a third party for the retrieval of his personal items. It is undisputed that Stacey refused to allow Matthew access to the marital property, and again, as a result, with Matthew having made a prima facie case of contempt, the burden then shifted to Stacey to show "by clear and convincing evidence that she was not willfully in contempt." Stacey offered no reasonable defense in that regard, and given the chancellor's discretion in contempt matters, we do not find the

12

chancellor in error.

> **III. The chancery court did not err by failing to award Stacey attorney's fees and court costs after making a prima facie case of contempt against Matthew.**

¶21. We have held that the trial court is the appropriate forum for the award of attorney's fees and costs, and we will not disturb a chancellor's decision in that regard unless that decision is manifestly wrong. *Mabus v. Mabus*, 910 So. 2d 486, 488 (¶7) (Miss. 2005). Stacey argues that the chancellor found that she proved her claim of contempt by clear and convincing evidence and therefore should have been awarded her fees and costs. In *Brown v. Brown*, 329 So. 3d 544, 562 (¶54) (Miss. Ct. App. 2021), we explained:

> Although a party who successfully prosecutes a contempt action may be entitled to attorney's fees, *Mabus* [*v. Mabus*], 910 So. 2d [486] at 489 (¶8) [(Miss. 2005)], "[w]hen the court denies a spouse's petition for contempt, no award of attorney's fees is warranted." *Weston v. Mounts*, 789 So. 2d 822, 827 (¶21) (Miss. Ct. App. 2001) (quoting *Varner v. Varner*, 666 So. 2d 493, 498 (Miss. 1995). **"The fact that a successful petitioner is eligible for an award of attorney's fees [in a contempt action] does not automatically entitle him [or her] to an award."** *Suess v. Suess*, 718 So. 2d 1126, 1129-30 (¶13) (Miss. Ct. App. 1998). In *Day v. Day*, 28 So. 3d 672, 677 (¶23) (Miss. Ct. App. 2010), the chancery court declined to award attorney's fees even though the wife had proven her husband to be in contempt on some issues. We found no error and noted that the chancellor was not uncritical of the wife on other issues. *Id*. at (¶25). We said, "[i]t is the function of the chancellor to weigh all of the facts and assess the circumstances and to award attorney's fees accordingly." *Id*. at (¶24). *See also Hartley v. Hartley*, 317 So. 2d 394, 395 (Miss. 1975) ("It is especially true in divorce cases that circumstances alter cases and that the chancellor should have wide authority and discretion in setting appropriate attorney's fees after carefully considering the facts of each case."). Because the chancery court found that Katherine was also in contempt of court, we find no abuse of discretion by the chancery court in denying Katherine's request for attorney's fees.

(Emphasis added).

13

¶22. We find the same is true here. We do not find the chancellor's decision was manifestly wrong, and therefore we will not substitute our judgment for his.

## CONCLUSION

¶23. Having found that all of Stacey's assignments of error are unpersuasive or without merit, the decision of the chancery court is affirmed.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**